PARRO, J.
12Plaintiffs, UTELCOM, Inc. and UCOM, Inc. (collectively, the companies), have appealed a judgment of the trial court granting a motion for partial summary judgment in favor of Cynthia Bridges, in her capacity as Secretary of the Louisiana Department of Revenue (the Department), finding that the companies were subject to the Louisiana corporation franchise tax for the taxable periods ending on December 31, 2001, December 31, 2002, and December 31, 2003 (the relevant periods). For the reasons that follow, we affirm in part, reverse in part, and render.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
UTELCOM and UCOM are foreign corporations organized under the laws of Kansas and Missouri, respectively. The companies are part of an affiliated group of corporations whose parent corporation was Sprint Corporation. Neither UTELCOM nor UCOM was registered or qualified to do business in Louisiana during the relevant periods, and each company maintained its only commercial domicile [1] exclusively outside of Louisiana.[2] *44 The companies owned limited partnership interests in three Delaware limited partnerships: (1) Sprint Communications Company LP (Sprint Communications LP), which is a long distance telecommunications company; (2) Sprint Enterprises LP (Enterprises LP), which handles wireless communications; and (3) SprintCom Equipment Company LP (Equipment LP), which owns telecommunications equipment that is leased to other Sprint affiliates. Sprint Communications LP was registered in Louisiana as a foreign limited partnership and conducted business in Louisiana.[3] It is owned by UCOM and UTELCOM, as limited partners, and by US Telecom, Inc. (US Telecom), as a general ^partner.'[4]
The companies initially filed Louisiana Corporation Income/Franchise Tax Returns for each of the relevant periods and paid both income and franchise taxes for those periods. Thereafter, the Department conducted an audit of the returns and issued notices of proposed taxes due, alleging that the companies owed additional franchise taxes and interest for the relevant periods. In response to these notices, the companies paid, under protest, a total of $276,518.40 in additional franchise taxes and related interest to the Department, pursuant to LSA-R.S. 47:1576. On August 11, 2005, the companies filed a petition for recovery of the franchise taxes and interest paid under protest, denying that they were subject to the franchise tax and seeking a refund of the entire amount paid under protest, plus statutory interest.[5] In addition to claiming that the Department had improperly applied the Louisiana statutes pertaining to the imposition of the franchise tax to them, the companies further contended that the proposed assessment of the franchise tax by the Department violated the privileges, immunities, and protections afforded them by the Commerce Clause of the United States Constitution and the Due Process and Equal Protection Clauses of the United States and Louisiana Constitutions.
The companies and the Department filed cross-motions for summary judgment concerning the companies’ claim for recovery of the monies paid under protest. The Department’s motion sought a partial summary judgment in its favor, finding that, as a matter of law, the proposed franchise tax assessment (1) fully complied with the Louisiana franchise tax laws, and (2) was not in violation of the Commerce Clause of the United States Constitution or the Due Process or Equal Protection Clauses of the United States and Louisiana Constitutions. The companies’ motion sought a summary judgment in their favor, finding that (1) none of the incidents of taxation specified in LLSA-R.S. 47:601 were present during the relevant periods; (2) LAC 61:I.301(D), the regulation relied on by the Department to purportedly interpret LSA-R.S. 47:601, was invalid, as it was beyond the scope of *45 the statute; and (3) the Department’s attempt to impose the franchise tax on the companies violated the protections afforded them by the Due Process and Commerce Clauses of the United States Constitution. In support of these respective motions, the Department filed the affidavits of Mike Pearson and Anthony Caruso,[6] and the companies filed two affidavits from Mark Beshears.[7] Thereafter, the Department filed a motion for attorney fees pursuant to LSA-R.S. 47:1512 and motions to strike the affidavits of Mark Beshears. The companies also filed motions to strike the affidavits of Anthony Caruso and Mike Pearson.
After a hearing, the trial court rendered a judgment granting the Department’s motion for partial summary judgment, finding that the companies owed the additional Louisiana corporate franchise tax and related interest for the relevant periods. The trial court further found that the proposed assessment of franchise tax fully complied with Louisiana’s franchise tax laws and did not violate the relevant Louisiana and United States constitutional provisions. The motion for summary judgment filed by the companies was denied. The judgment further ordered the companies to pay the Department’s attorney fees in the amount of 10% of the additional corporation franchise tax and related interest awarded in accordance with the provisions of LSA-R.S. 47:1512. In addition, the judgment ordered that the affidavits of Anthony Caruso and Mike Pearson, which had been submitted by the Department, be stricken in their entirety. Finally, the judgment ordered that the original affidavit of Mark Beshears dated October 2, 2009, be stricken as to paragraphs 7, 8, 9, 14,19, 21, 22, and 23, and that the affidavit of Mark Beshears dated October 15, 2009, be stricken as to paragraphs 5, 6, 7, 8, 9, 10,11,12, and 13.
Ifilt is from this judgment[8] that the companies have appealed.[9] The Department has answered the appeal with regard to the trial court’s ruling concerning the affidavits of Anthony Caruso and Mike Pearson. In its answer, the Department has also requested that the companies be required to pay all costs of court, in both the trial and appellate courts, and that it be awarded additional attorney fees on appeal.
SUMMARY JUDGMENT
An appellate court’s review of a summary judgment is a de novo review based on the evidence presented to the trial court, using the same criteria used by the trial court in deciding whether a summary *46 judgment should be granted. Buck’s Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. A motion for summary judgment should be granted only if all the pleadings, depositions, answers to interrogatories, admissions, and any affidavits submitted to the trial court show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). If the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing that there is no genuine issue of material fact is on the party bringing the motion. See LSA-C.C.P. art. 966(C)(2).
RELEVANT LAW
The Louisiana corporate franchise tax is imposed pursuant to LSA-R.S. 47:601, which, during the relevant periods, provided:
A.Every domestic corporation and every foreign corporation, exercising its charter, or qualified to do business or actually doing business in this state, or owning or using any part or all of its capital, plant, or any other property in this state, subject to compliance with all other provisions of | filaw, except as otherwise provided for in this Chapter shall pay an annual tax at the rate of $3.00 for each $1,000.00, or major fraction thereof on the amount of its capital stock, surplus, undivided profits, and borrowed capital, determined as hereinafter provided; the minimum tax shall not be less than $10.00 per year in any case. The tax levied herein is due and payable on any one or all of the following alternative incidents:
(1)The qualification to carry on or do business in this state or the actual doing of business within this state in a corporate form. The term “doing business” as used herein shall mean and include each and every act, power, right, privilege, or immunity exercised or enjoyed in this state, as an incident to or by virtue of the powers and privileges acquired by the nature of such organizations, as well as, the buying, selling, or procuring of services or property.
(2) The exercising of a corporation’s charter or the continuance of its charter within this state.
(3) The owning or using any part or all of its capital, plant, or other property in this state in a corporate capacity.
B. It is the purpose of this Section to require the payment of this tax to the state of Louisiana by domestic corporations for the right granted by the laws of this state to exist as such an organization, and by both domestic and foreign corporations for the enjoyment, under the protection of the laws of this state, of the powers, rights, privileges, and immunities derived by reason of the corporate form of existence and operation. The tax hereby imposed shall be in addition to all other taxes levied by any other statute.
C. (1) As used herein the term “domestic corporation” shall mean and include all corporations, joint stock companies or associations, or other business organizations organized under the laws of this state which have privileges, powers, rights, or immunities not possessed by individuals or partnerships.
(2) The term “foreign corporation” shall mean and include all such business organizations as hereinbefore described in this Paragraph which are organized under the laws of any other state, territory or district, or foreign country.
D. The increase in the tax imposed by this Section from one dollar and fifty *47 cents to three dollars for each one thousand dollars, or major fraction thereof, of capital stock, surplus, undivided profits, and borrowed capital shall not be applicable to the first three hundred thousand dollars of capital stock, surplus, undivided profits, and borrowed capital of each corporation.
Taxing statutes are to be interpreted liberally in favor of the taxpayer and against the taxing authority. See Goudchaux/Maison Blanche. Inc. v. Broussard, 590 So.2d 1159, 1161 (La.1991). If the statute can reasonably be interpreted more than one way, the interpretation less onerous to the taxpayer is to be adopted. Entergy Louisiana, Inc. v. Kennedy, 03-0166 (La.App. 1st Cir.7/2/0S), 859 So.2d 74, 79, writ denied, 03-2201 (La.11/14/03), 858 So.2d 430; see also United Gas Corporation v. Fontenot, 241 La. 564, 579, 129 So.2d 776, 781 (1961).
Furthermore, words defining a thing to be taxed should not be extended beyond their clear import. Cleco Evangeline, LLC v. Louisiana Tax Com’n, 01-2162 (La.4/3/02), 813 So.2d 351, 355. Absent evidence to the contrary, the language of the statute itself must clearly and unambiguously express the intent to apply to the property in question. Unless the words imposing the tax are expressly in the statute, the tax cannot be imposed. Id.
DISCUSSION
On appeal, the companies contend that the trial court erred in granting the Department’s motion for partial summary judgment, finding that the companies were subject to the franchise tax for the relevant periods. The companies note that LSA-R.S. 47:601(A) authorizes the imposition of the franchise tax only on a corporation, and only if the corporation undertakes one or more of the enumerated incidents of taxation in Louisiana and does so in a corporate capacity. The companies contend that they were not subject to the franchise tax for the relevant periods, because they were non-resident corporations whose only contacts with Louisiana were through their passive ownership interests as limited partners in Sprint Communications LP, a limited partnership that owned property and conducted business in Louisiana. The companies insist that this connection is insufficient to impose the franchise tax on them as a matter of law.
According to the statement of uncontested facts submitted by the companies in support of their motion for summary judgment, as well as the pleadings and answers to interrogatories in the record, neither company was registered or qualified to do business in Louisiana or engaged in any business activities in Louisiana during the relevant periods. Furthermore, during the relevant periods, neither company: (1) rendered any services to or for any affiliate, or to or for any other party in Louisiana; (2) had any employees, independent contractors, agents, or other representatives in | ¡¿Louisiana;[10] (3) bought, sold, or procured any services or property in Louisiana; or (4) maintained any bank accounts in Louisiana. Finally, each company maintained its office and only commercial domicile outside Louisiana, where the companies maintained their respective corporate books and records and where all management decisions regarding their respective limited partnership interests in Sprint *48 Communications LP were made and implemented.
The Department does not appear to dispute any of these facts. Instead, the Department contends that the companies are subject to the franchise tax based on the actions of other entities. The Department emphasizes the fact that the companies are wholly-owned subsidiaries of Sprint Corporation and that the companies, along with US Telecom, Sprint Communications LP’s general partner, acted in unison and with a common purpose, controlled by their common parent. According to the Department, it is significant for franchise tax purposes that Sprint Corporation chose to carry out its telecommunications business in Louisiana through Sprint Communications LP and that it chose to direct that partnership through the companies and US Telecom, which were wholly-owned subsidiaries.
The Department does not provide any examples of how Sprint Corporation directed the activities of Sprint Communications LP or of the companies, other than to suggest that they were united in them purpose. However, “unity of purpose” does not appear anywhere as an incident of taxation in LSA-R.S. 47:601(A). Furthermore, Sprint Corporation, US Tele-com, Sprint Communications LP, and the companies are all separate juridical entities under the law. See LSA-C.C. arts. 24 and 2801; LSA-R.S. 12:41. The Department has provided no Louisiana codal, statutory, or jurisprudential authority to explain how the actions of these other entities are to be attributed to the companies, and nothing in LSA-R.S. 47:601 authorizes any such attribution.
The Department also contends that the actions of US Telecom, as the general partner for Sprint Communications LP, should be attributable to the companies, because |flUS Telecom carried out its actions on behalf of all partners. Thus, it appears that the Department is contending that US Telecom has acted as the agent for the companies. This argument has no basis in the law. As the only general partner, US Telecom has the authority to bind the partnership,[11] but it has no authority to act as the agent for the limited partners, namely, the companies. See LSA-C.C. art. 2843.[12] Accordingly, the Department’s argument that US Telecom’s actions can be attributed to the companies is without merit.
The Department’s main argument in support of its position that the companies are subject to the franchise tax is based primarily on its own regulation, LAC 61:I.301(D), which provides:
Thus, the mere ownership of property within this state, or an interest in property within this state, including but not *49 limited to mineral interests and oil payments dependent upon production within Louisiana, whether owned directly or by or through a partnership or joint venture or otherwise, renders the corporation subject to franchise tax in Louisiana since a portion of its capital is employed in this state. [Emphasis added.]
It is true that the Secretary of the Department has the authority to prescribe rules and regulations to carry out the purposes of Title 47 of the Louisiana Revised Statutes, and such rules and regulations will have the full force and effect of law if promulgated pursuant to the Administrative Procedure Act. See LSA-R.S. 47:1511. However, it is well-settled law in Louisiana that a tax regulation cannot extend the taxing jurisdiction of the statute, as taxes are imposed by the legislature, not the Department. See Chicago Bridge & Iron Co. v. Cocreham, 317 So.2d 605, 612 (La.1975), cert. denied, 424 U.S. 953, 96 S.Ct. 1427, 47 L.Ed.2d 359 (1976); Pensacola Const. Co. v. McNamara, 558 So.2d 231, 233-34 (La.1990); Dow Chemical Co. v. Traigle, 336 So.2d 285, 288 (La.App. 1st Cir.), cert. denied, 339 So.2d 845 (La.1976).
In light of the above, it appears the salient issue is whether this regulation was a reasonable interpretation of the relevant statutory authority setting forth the bases for the imposition of Louisiana’s corporate franchise tax, or was a prohibited expansion of the scope of the statute. See LSA-R.S. 47:601(A). Under the facts of this case, there can be no dispute that the incidents of taxation specified in LSA-R.S. 47:601(A)(1) and (2) were not present with respect to the companies during the relevant periods. Therefore, our analysis will focus on the incident of taxation set forth in LSA-R.S. 47:601(A)(3).
Under the provisions of LSA-R.S. 47:601(A)(3), the franchise tax is imposed only on a corporation “owning or using any part or all of its capital, plant, or other property in [Louisiana] in a corporate capacity.” No mention is made of the use of capital through a partnership or in any other indirect capacity. Indeed, LSA-R.S. 47:601(B) states that the purpose of the franchise tax is to require the payment of the tax by both foreign and domestic corporations “for the enjoyment, under the protection of the laws of this state, of the powers, rights, privileges, and immunities derived by reason of the corporate form of existence and operation.” (Emphasis added.) Furthermore, in interpreting LSA-R.S. 47:601, the Louisiana Supreme Court has stated:
The thrust of the statute is to tax not the interstate business done in Louisiana by a foreign corporation, but the doing of business in Louisiana in a corporate form....
Colonial Pipeline Co. v. Agerton, 289 So.2d 93, 97 (La.1974), aff'd, 421 U.S. 100, 95 S.Ct. 1538, 44 L.Ed.2d 1 (1975). Yet, the Department’s regulation has ignored the clear wording of the statute and the interpretation of the supreme court and seeks to expand the scope of the specific “incident of taxation” at issue, i.e., LSA-R.S. 47:601(A)(3).
Instead of a corporation being subject to the franchise tax simply for owning or using any part or all of its capital, plant, or other property in this state “in a corporate capacity” as provided in LSA-R.S. 47:601(A)(3), the above regulation attempts to subject a foreign corporation to the franchise tax for the “additional incident” of owning In or using a part of its capital in this state, not in a corporate capacity but indirectly through a limited partnership.[13] *50 This is clearly an impermissible expansion of the statutory language.
It is undisputed that the companies, as limited partners, made various “capital” contributions to Sprint Communications LP, as required by the partnership agreement. See also LSA-C.C. art. 2840. However, once those contributions were made, the capital belonged to Sprint Communications LP and not to the companies, because Sprint Communications LP, as a partnership, is a separate juridical person, distinct from its partners. See LSA-C.C. art. 2801. Therefore, the capital that had been owned by the companies was now owned and being used by Sprint Communications LP in Louisiana. The companies, as limited partners, maintained an ownership interest in Sprint Communications LP,[14] but the capital itself was no longer owned or used by them; thus, the incident of taxation set forth in LSA-R.S. 47:601(A)(3) was not applicable. Under the plain wording of the statute, there was no statutory incident of taxation on which to impose the franchise tax, and any attempt by the Department to administratively expand the scope of the statute beyond its clear meaning is not permissible.[15] See Cleco Evangeline, LLC, 813 So.2d at 355. Accordingly, the trial court erred in granting partial summary judgment in favor of the Department, and that portion of the judgment is reversed. Moreover, we grant summary judgment in favor of the companies.
The companies have also challenged that portion of the trial court’s judgment that found that the assessment of franchise taxes on them was not in violation of the Commerce Clause of the United States Constitution or the Equal Protection or Due 112Process Clauses of the United States and Louisiana Constitutions.[16] Courts should not pass on the constitutionality of legislation, unless it is essential to the decision of the case or controversy. Moreover, courts should avoid constitutional rulings when the case can be decided on the basis of nonconstitu-tional issues. Blanchard v. State Through Parks and Recreation Com’n, 96-0053 (La.5/21/96), 673 So.2d 1000, 1002. Because we have already determined that assessment of the franchise tax on the companies is improper under the language of the statute itself, the question of constitutionality is not essential to the determination of the issues before this court. Accordingly, the issues of constitutionality are pretermitted.[17]
*51 Nevertheless, we will briefly address three cases, which the Department has contended are dispositive of the constitutional issues in this matter. The three cases are Bridges v. Autozone Properties, Inc., 04-0814 (La.3/24/05), 900 So.2d 784, Secretary, Dept. of Revenue, State of La. v. GAP (Apparel), Inc., 04-0263 (La.App. 1st Cir.6/25/04), 886 So.2d 459, and Bridges, Secretary of Dept. of Revenue, State v. Geoffrey, Inc., 07-1063 (La.App. 1st Cir.2/8/08), 984 So.2d 115, writ denied, 08-0547 (La.4/25/08), 978 So.2d 370.
In Autozone, the issue was whether Louisiana had taxing jurisdiction over the dividend income of a nonresident beneficiary, based on its investment in a company that did business in Louisiana and received the benefits, opportunities, and protections that arose as a result thereof. Autozone, 900 So.2d at 800. The supreme court ultimately determined that Louisiana had jurisdiction to tax the dividend income; however, the court did not discuss the issue of jurisdiction with respect to the franchise tax. Therefore, the case is inapplicable to the matter before this court.
The same is true of this court’s decision in Geoffrey. While the trial court addressed the issue of the franchise tax, finding that the Department had established its entitlement to the franchise tax, the taxpayer did not assign that ruling as error or |isattack the validity of the statute. Therefore, this court’s decision addressed only the issues surrounding the assessment of the corporate income tax, and it provides no guidance as to the applicability of the franchise tax in this matter. Geoffrey, 984 So.2d at 119 n. 5.
Finally, in Gap (Apparel), this court addressed a corporate structure in which The Gap, Inc. had created, developed, and registered various trademarks, trade names, and service marks (the marks) that were used in its various retail stores throughout the United States, including those in Louisiana. At some point, through various transactions, The Gap transferred these marks to Gap (Apparel), which was a wholly-owned subsidiary of one of The Gap’s other subsidiaries.[18] Gap (Apparel), 886 So.2d at 461.
After the marks were transferred, Gap (Apparel) and The Gap entered into an agreement whereby Gap (Apparel) granted a license to The Gap authorizing The Gap and its affiliates (the licensees) to use the marks in connection with the manufacture, advertising, marketing, distribution, and sale of their products in the United States, its states, territories, and/or possessions. For the use of the marks, the licensees paid Gap (Apparel) a royalty based on the net sales of the licensed products throughout the area in which they were used. The Department contended that Gap (Apparel) received approximately $11.9 million from the licensees during the relevant tax periods as royalties for the use of the marks, calculated as a percentage of sales in Louisiana. Gap (Apparel), 886 So.2d at 461-62.
This court ultimately determined that the marks licensed by Gap (Apparel) had been used in Louisiana in such a way as to become an integral part of the licensees’ businesses in this state, such that the marks had acquired a business situs in this state. Thus, the court concluded that they were subject to taxation in Louisiana. Gap (Apparel), 886 So.2d at 462.
1 uThese facts are distinguishable from those of the matter currently before this court, however. In Gap (Apparel), the marks continued to be owned by Gap (Apparel) even though they had been licensed *52 for use by others. Gap (Apparel) retained ownership of the marks and received income for their use by others, for which it sought to avoid paying taxes. Furthermore, Gap (Apparel), itself, owned property that was being used in the state. See LSA-R.S. 47:601(A)(3). In the instant case, the companies are paying income taxes on the income they derive from Sprint Communications LP’s business in this state; however, unlike Gap (Apparel), the property that Sprint Communications LP is using in this state belongs to it alone, not to the companies. In conclusion, these three cases would not be relevant to the matter before the court if the question of constitutionality were at issue.
The companies have also challenged that part of the trial court’s judgment finding that they are required to pay the Department’s attorney fees pursuant to LSA-R.S. 47:1512. However, as we have determined that the companies were not required to pay franchise taxes under a clear reading of the statute, it follows that the companies are not required to pay attorney fees under the penal provisions of LSA-R.S. 47:1512. Therefore, that portion of the judgment of the trial court is reversed.
In their final assignment of error, the companies contend that the trial court erred in striking certain paragraphs of the original affidavit of Mark Beshears, dated October 2, 2009. Mr. Beshears was the Senior Counsel-State and Local Tax of Sprint Nextel Corporation, and he had served as the Vice President-State and Local Tax of the companies during the relevant periods. As such, he was familiar with the business activities of the companies.
The trial court first ordered that paragraph 7 of the original affidavit, which provided that “[djuring the Relevant Periods, each Petitioner maintained its only commercial domicile exclusively outside of Louisiana,” be stricken. Although the trial court did not provide a reason for striking this paragraph, it is presumed that it was stricken because the trial court found it to be a legal conclusion. However, the issue of commercial domicile was settled as a result of the pleadings, when the companies | ^alleged in their petition that they had each maintained their only commercial domicile outside the state of Louisiana, and the Department admitted the allegation in its answer. The Department never amended its answer; therefore, the issue of commercial domicile was considered resolved by judicial admission,[19] and Mr. Beshears’ statement was no longer a legal conclusion, but a statement of fact. Thus, paragraph 7 of the affidavit should not have been stricken.
The companies also challenge the trial court’s ruling regarding paragraphs 9, 14, and 19 of Mr. Beshears’ original affidavit.[20] In these paragraphs, Mr. Beshears asserts that the companies: (1) did not own or use any part of their capital, plant, or other property in Louisiana during the relevant periods; (2) did not exercise or continue their respective charters in Louisiana during the relevant periods; and (3) did not purposely direct any of their activities toward or into Louisiana during the relevant periods. The trial court struck these paragraphs, apparently finding that they were impermissible legal conclusions. However, in his capacity as Vice President — State and Local Tax of the companies during the relevant periods, Mr. *53 Beshears was certainly competent to testify from his personal knowledge of the companies’ activities. See LSA-C.C.P. art. 967. Clearly, as someone involved in the daily operation of the companies, Mr. Beshears would have personal knowledge of whether the companies directed any of the above activities toward Louisiana during the relevant periods. Furthermore, the mere fact that Mr. Beshears’ assertions in the affidavit track the incidents of taxation listed in LSA-R.S. 47:601(A) does not render them impermissible legal conclusions, as the Department contends; rather, the statements are simply factual statements based on Mr. Beshears’ personal knowledge and experience. Therefore, the trial court improperly struck paragraphs 9,14, and 19 from the affidavit.
The companies contend that the filing of the second Beshears affidavit has rendered the argument in favor of striking paragraphs 22 and 23 of the original 11fiBeshears affidavit moot. Those paragraphs provided information concerning the contents of the Sprint Communications LP partnership agreement and were stricken as hearsay because the actual partnership agreement was not attached. However, in the second affidavit, the partnership agreement was attached, and the partnership agreement itself was admitted into the record. Therefore, the companies contend that there is no longer any need to exclude these paragraphs.
In fact, the Department had challenged paragraphs 22 and 23 even after the attachment of the partnership agreement to the second affidavit on the ground that the partnership agreement itself was the best evidence of its contents. The trial court agreed, and we find no error in this conclusion.[21]
The trial court also ordered that the two affidavits filed by the Department be stricken from the record. The Department has answered the appeal to challenge the rulings on these affidavits. The first affidavit was that of Michael Pearson and was filed by the Department in support of its partial motion for summary judgment. At the time he signed the affidavit, Mr. Pearson was the director of the policy services division of the Department. He had held that position for almost two years, after being the senior policy consultant for income and franchise taxes in the policy services division for the previous seven years, in which there had been no director. According to Mr. Pearson’s affidavit, he was very knowledgeable on the issue of the Louisiana corporation franchise tax, and he had testified over the years in the Nineteenth Judicial District Court and the Louisiana State Board of Tax Appeals on the issue of the Louisiana corporate income and franchise taxes. He does not, however, make any allegations that he is a lawyer in the affidavit. The remainder of his affidavit provides a myriad of legal conclusions allegedly based on Louisiana statutory law and jurisprudence, as well as Department policy, which legal conclusions support the Department’s premise that the companies are subject to the franchise tax.
Mr. Pearson’s affidavit does not qualify him as an expert, and the trial court | ncertainly did not accept him as one. Nothing in his affidavit demonstrates that he is qualified to render a legal opinion. Furthermore, as a lay witness, Mr. Pearson is not qualified to offer an opinion of the kind he attempted to offer in his affidavit. See LSA-C.E. art. 701.
*54 It is also well-settled in Louisiana that witnesses may not provide opinions regarding domestic law. The testimony of an expert, with the attendant right to express opinions and conclusions, is proper for the purpose of assisting the court only in those fields in which the court lacks sufficient knowledge to enable it to come to a proper conclusion without such assistance. Wilson v. Wilson, 542 So.2d 568, 573 (La.App. 1st Cir.1989); Clesi, Inc. v. Quaglino, 137 So.2d 500, 503 (La.App. 4th Cir.1962). The domestic law testimony of an expert is not proper, as distinguished from foreign law testimony, on the theory that the court itself is the expert on domestic law. Wilson, 542 So.2d at 573.
Furthermore, nothing in Mr. Pearson’s affidavit appears to be based on personal knowledge as required by LSA-C.C.P. art. 967(A), and the affidavit appears to contain nothing other than his opinions relating to issues of ultimate fact and conclusions of law, which are reserved for the trial court’s determination. Accordingly, we find that the trial court was correct in striking this affidavit.
The final affidavit is that of Anthony Caruso, who at the time he signed his affidavit, was employed by the Department as a senior revenue agent. The affidavit had been submitted by the Department in opposition to the companies’ motion for summary judgment. Mr. Caruso claims that the statements in his affidavit are based on the personal knowledge he obtained after conducting an audit of the companies.
In paragraph 3 of the affidavit, Mr. Caruso stated that the companies were required to file Louisiana corporate franchise tax returns for the relevant periods. In paragraph 14, Mr. Caruso stated that the companies, through them contributions of capital to Sprint Communications LP, which clearly conducted business in Louisiana, have engaged in business, exercised their respective charters, and employed capital in Louisiana. In paragraph 15 of the affidavit, Mr. Caruso stated that the companies are | issubject to the franchise tax. Obviously, these statements relate to issues of ultimate fact and conclusions of law, which are reserved for the trial court’s determination, and the trial court was correct in striking paragraphs 3, 14, and 15 of the affidavit. The remainder of the affidavit contains factual statements, such as the amounts of capital contributions the companies made to Sprint Communications LP and other information that Mr. Caruso could have obtained in performing his audit. This information was based on his personal knowledge and was properly contained in the affidavit. Therefore, paragraphs 1, 2, 4, 5, 6, 7, 8, 9,10, 11, 12, and 13 should not have been stricken, and the trial court erred in this regard.
Finally, in its answer to the appeal, the Department has also requested that it be awarded additional attorney fees on appeal. However, as we have determined that the companies were not required to pay a franchise tax under the facts of this case, no attorney fees should have been assessed against them pursuant to LSA-R.S. 47:1512, and no additional attorney fees are owed on appeal.
CONCLUSION
For the foregoing reasons, we reverse that portion of the trial court judgment that granted the partial summary judgment in favor of Cynthia Bridges, Secretary of the Louisiana Department of Revenue, and render summary judgment in favor of UTELCOM, Inc. and UCOM, Inc., finding that they are not subject to the Louisiana corporation franchise tax for the taxable periods ending December 31, 2001, December 31, 2002, and December 31, 2003. UTELCOM, Inc. and *55 UCOM, Inc. are further entitled to a refund of the amount paid under protest, $276,518.40, plus statutory interest. We further reverse that portion of the judgment ordering UTELCOM, Inc. and UCOM, Inc. to pay attorney fees pursuant to LSA-R.S. 47:1512. We affirm that portion of the judgment striking paragraphs 22 and 23 of the original affidavit of Mark Beshears. However, we reverse that portion of the trial court’s judgment striking paragraphs 7, 9, 14, and 19 of the original affidavit of Mark Beshears. We further affirm that portion of the trial court’s judgment striking the affidavit of Mark Pearson in its entirety. Finally, we affirm that portion of the trial court’s judgment striking paragraphs 3, 14, and 15 of 119the affidavit of Anthony Caruso; however, we reverse that portion of the judgment striking paragraphs 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13. In all other respects, the judgment of the trial court is affirmed. All costs of this appeal, in the amount of $2,529.82, are assessed to Cynthia Bridges, in her capacity as Secretary of the Louisiana Department of Revenue.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

. The "commercial domicile” of a corporation exists where the principal place of business is located and from which the corporation’s activities function and are managed. United Gas Corporation v. Fontenot, 241 La. 488, 509, 129 So.2d 748, 756 (1961).

. It is undisputed that the companies were not registered or qualified to do business in Louisiana; however, the Department contends that the companies actually did conduct business in Louisiana through the actions of other entities. As for the issue of commercial domicile, the companies alleged in their petition that their commercial domiciles were located outside of Louisiana, and the Department admitted the allegation in its answer.

. Enterprises LP and Equipment LP were owned by UCOM, as the limited partner, and by US Telecom, Inc., as the general partner. Neither partnership was registered as a foreign limited partnership in Louisiana, nor did they own any property or conduct any business in Louisiana. Therefore, they are not relevant to the issues in this matter.

. Sprint Communications LP apparently had an additional limited partner, Sprint International Communications Corp.; however, this corporation is not involved in this matter.

.The petition filed by the companies sought only the recovery of the franchise tax amounts and related interest paid under protest. According to the brief filed by the companies in this court, the companies intend to file amended franchise tax returns and seek refunds of the franchise taxes they had paid prior to the audit by the Department. Those taxes are not at issue in this matter.

. The affidavit of Anthony Caruso was filed by the Department in opposition to the companies’ motion for summary judgment.

. The parties also relied on the pleadings and answers to interrogatories in the record.

. The original judgment signed by the trial court only stated that the motion for partial summary judgment of the Department had been granted and that the motion for summary judgment of the companies had been denied. After this court issued a rule to show cause to the parties, noting that the judgment failed to identify the specific relief awarded, the trial court signed an amended judgment more clearly setting forth the relief granted.

.The Department originally filed a motion for partial summary judgment, believing that the issue of the amount of the taxes was still at issue; however, the companies did not challenge the amount of the taxes. The Department then filed its motion for attorney fees, stating that all issues were before the court. Under these circumstances, we conclude that all issues in this matter are reviewable under this appeal; therefore, the companies' appeal of the denial of its motion for summary judgment is properly before this court.

. It is undisputed that any employees provided to Sprint Communications LP were provided by Sprint/United Management Company, a wholly-owned subsidiary of Sprint Corporation, and not by the companies.

. The Department suggests that, because Sprint Communications LP is a Delaware partnership, Louisiana partnership law is inapplicable to this matter. However, during the relevant periods, Sprint Communications LP was registered to do business in Louisiana; therefore, it enjoyed the rights, privileges, and juridical status of a Louisiana partnership in accordance with LSA-R.S. 9:3422(A)(1). Delaware law applied only to the organization, internal affairs, and liability of Sprint Communications LP See LSA-R.S. 9:3425.

. LSA-C.C. arts. 2843 and 2844 establish the limits of liability and authority on the limited partners (partners in commendam) in limited partnerships. Such limited partners, like the companies, do not participate in the control of the business and do not have the authority to bind the partnership. Furthermore, the Sprint Communications LP partnership agreement specifically provides that the companies shall have no right or power to take part in the management or control of the partnership or its business and affairs or to act for or bind the partnership in any way.

. In essence, the role of a limited partner is that of a passive contributor whose powers are generally restricted to the protection of his interest. See LSA-C.C. art. 2843, Revision *50 Comment — 1980. It would seem illogical to impose a franchise tax on a foreign corporation whose sole contact with Louisiana is through the passive ownership, as a limited partner, of an interest in a partnership, which owns property and does business in Louisiana, when the partnership itself is not subject to a franchise tax.

. See LSA-C.C. art. 473.

. The Department has contended that the companies have improperly challenged the regulation by not bringing the challenge in an action for declaratory judgment pursuant to LSA-R.S. 49:963(A); however, that statute merely states that the validity or applicability of a rule “may” be determined in an action for declaratory judgment in the district court of the parish in which the agency is located. As provided by LSA-R.S. 1:3, the word "may” is permissive, not mandatory.

. The companies properly challenged the constitutionality of LSA-R.S. 47:601 in their petition. However, because they did not seek declaratory relief, service of the attorney general was not required. See LSA-C.C.P. art. 1880; Vallo v. Gayle Oil Co., Inc., 94-1238 (La.11/30/94), 646 So.2d 859, 864.

. The issue of constitutionality also was not essential to the trial court’s ruling; therefore, the trial court should not have addressed the issue.

. This factual pattern is similar to that found in Geoffrey; however, because this court did not address the franchise tax in any capacity in Geoffrey, those facts are not set forth here.

. See LSA-C.C. art. 1853.

. Although the companies challenge the court's ruling regarding paragraph 24, the actual judgment makes no reference to this paragraph. Accordingly, we will not address this paragraph.

. The companies have not challenged any portion of the trial court's judgment striking paragraphs in the second Beshears affidavit. Therefore, we do not address that affidavit