808 So.2d 740 (2001)
CLECO EVANGELINE, LLC
v.
LOUISIANA TAX COMMISSION
No. 2001 CA 0561.
Court of Appeal of Louisiana, First Circuit.
June 22, 2001.
Writ Granted November 16, 2001.
*741 Robert S. Angelico, Cheryl M. Kornick, New Orleans, for Plaintiff-Appellee Cleco Evangeline, LLC.
Theodore L. (Ted) Jones, Brian A. Eddington, Baton Rouge, for Defendant-Appellant Louisiana Tax Commission.
Michele W. Crosby, Edward H. Bergin, New Orleans, for Amicus Curiae Louisiana Generating, LLC.
Before: FOIL, FOGG and CLAIBORNE,[1] JJ.
IAN W. CLAIBORNE, Judge Pro Tem.
This case presents a res nova issue. We must determine whether Cleco Evangeline, LLC, a wholesale electric power generating plant, is an "electric power company" as defined by La. R.S. 47:1851(E), and whether its property constitutes "public service property" as defined by La. R.S. 47:1851 (M) or "other property" for purposes of assessing ad valorem taxes pursuant to La. Const. Art. VII, § 18(B). For the following reasons, we affirm the district court's reversal of the Louisiana Tax Commission, finding that the property at issue is not public service property.

FACTS AND PROCEDURAL HISTORY
The facts are undisputed. Cleco Evangeline, LLC (Cleco) is in the process of constructing a new wholesale electric *742 power manufacturing facility in Evangeline Parish. This new facility will eventually be funded by private investors and is operated separate and apart from the regulated public utility company, Cleco Utility Group, Inc. The new Cleco plant is a non-regulated entity owned by its parent company, Cleco Midstream Resources (also a non-regulated entity).[2] Once it is operational, the new Cleco facility will engage primarily in the business of manufacturing, generating and supplying electricity for sale exclusively on the wholesale market, rather than to the general public.
On March 30, 1999, the Controller for the holding company, Cleco Corporation, communicated by letter with the Evangeline Parish Assessor regarding the new Cleco facility and the assessment of the local ad valorem property tax rate of 15% of the property's fair market value. On June 8, 1999, the Louisiana Tax Commission (LTC) notified Cleco of its determination that the new Cleco facility's property was "public service property," and must be assessed centrally by the state at an ad valorem property tax rate of 25% of the property's fair market value. Cleco formally protested the LTC's determination that the Cleco facility was public service property. A hearing before the LTC was heard on November 3, 1999.
On February 22, 2000, the LTC issued a ruling that the Cleco facility was public service property and would be centrally assessed by the LTC at 25% of fair market value. Cleco sought judicial review of the LTC ruling by filing a petition in the Nineteenth Judicial District Court on May 20, 2000. On January 29, 2001, the district court reversed the LTC's ruling, and held that the Cleco facility was not public service property and should be locally assessed at 15% of fair market value. This appeal by the LTC followed the district court's ruling.

STANDARD OF REVIEW
Judicial review of decisions of the LTC is authorized by La. R.S. 47:1998(A)(1); the extent of that review is governed by La. R.S. 49:964(F) and (G) of the Administrative Procedures Act. Comm-Care Corporation v. Louisiana Tax Commission, 99-0709, p. 4 (La.App. 1st Cir.6/23/00), 762 So.2d 770, 773, writ denied, 2000-2271 (La.10/27/00), 772 So.2d 656. La. R.S. 49:964(F) confines judicial review to the record established in the administrative proceedings, in this instance before the LTC.
La. R.S. 49:964(G) allows the district court to affirm or remand the agency (the LTC) decision and restricts reversal or modification of that decision to instances in which substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary, capricious, or characterized by an abuse of discretion or clearly unwarranted exercise of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court. When reviewing a final decision under the Administrative Procedures Act, the district court functions as an appellate court. An aggrieved party may obtain review of any final judgment of the district court by appeal to the *743 appropriate court of appeal. Comm-Care Corporation, 99-0709 at 4-5, 762 So.2d at 772-773.
On appeal, the LTC basically argues that the district court made an error of law when it incorrectly interpreted the definitions of "electric power company" and "public service properties" as defined in La. R.S.47:1851(E) and (M) and as applied in the ad valorem tax statute, La. Const. Art. VII, § 18(B). Our review is de novo in the sense that we give no deference to the factual findings or legal conclusions of the tribunals below. We are free to make our own determinations of the correct legal meaning of the appropriate statutes and render judgment on the record. Southlake Development Co. v. Secretary of Dept. of Revenue and Taxation for State of La., 98-2158, p. 3 (La.App. 1st Cir.11/5/99), 745 So.2d 203, 205, writ denied, XXXX-XXXX (La.2/4/00), 754 So.2d 235; Louisiana Automotive Financial Services, Inc. v. Department of Economic Development, Office of Financial Institutions, 98-0981, p. 4 (La.App. 1st Cir.5/14/99), 743 So.2d 217, 219.

DISCUSSION
The 1974 Louisiana Constitution, Article VII, § 18 provides that property subject to ad valorem taxation shall be assessed at a percentage of its fair market value. The two pertinent classifications of property subject to ad valorem taxation set forth in § 18(B)(4) are "public service properties" at 25% and § 18(B)(5) "other property" at 15%. Section 18(D) provides, in pertinent part, that "[e]ach assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission." Section 18(B) further provides that "[t]he legislature may enact laws defining electric cooperative properties and public service properties."
By Acts 1976, No. 703, § 1, in La. R.S. 47:1851(M), the Louisiana Legislature defined "public service properties" to mean "the immovable, major movable, and other movable property owned or used but not otherwise assessed in this state in the operations of each airline, electric membership corporation, electric power company, express company, gas company, pipeline company, railroad company, telegraph company, telephone company and water company. For each barge line, towing company or private car company, only the major movable property owned or used but not otherwise assessed in this state in interstate or interparish operations shall be considered as public service property." (Emphasis added.) The legislature also defined "electric power company" in La. R.S. 47:1851(E) to mean "a company primarily engaged in the business of manufacturing, generating, supplying, or manufacturing, generating and supplying electricity for light, heat, or power to consumers in this state." (Emphasis added.) Unfortunately, the legislature did not provide a definition of "consumers," which is ultimately the pivotal word at issue.
We must determine whether Cleco's business falls within the purview of the legislative definition of an electric power company. Both Cleco and the LTC agree that the Cleco facility will be primarily engaged in the business of manufacturing, generating, and supplying electricity. The confusion and disagreement becomes apparent when exploring the customers to whom the Cleco facility supplies electricity. Both parties agree that the electricity generated by the Cleco facility will only be sold to wholesalers or "tollers," who in turn will resell the electricity to retailers who will sell/supply the electricity to the *744 general public. It is undisputed that the electricity eventually ends up with the final user/general public; however, Cleco does not supply the electricity directly to the general public. Thus, we must attempt to interpret the meaning of the word "consumers" in the statute at issue. The LTC acknowledged in its findings of fact and reasons for decision that "a clarification of the statute needs to be determined and the issue resolved."

STATUTORY INTERPRETATION
In interpreting statutes, we begin with the well-settled premise that taxing statutes must be strictly construed against the taxing authority, and where a tax statute is susceptible of more than one reasonable interpretation, the construction favorable to the taxpayer is adopted. Goudchaux/Maison Blanche, Inc. v. Broussard, 590 So.2d 1159, 1161 (La.1991). Tax laws are to be interpreted liberally in favor of the taxpayer, and words defining things to be taxed should not be extended beyond their clear import. Uncertainty in the language of the statute must be resolved against the government and in favor of the taxpayer. Hibernia Nat. Bank in New Orleans v. Louisiana Tax Commission, 195 La. 43, 196 So. 15, 18 (1940).
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ.Code art. 9. This principle applies to tax statutes. Tarver v. E.I. Du Pont De Nemours and Co., 93-1005, p. 3 (La.3/24/94), 634 So.2d 356, 358. It is a recognized rule of statutory construction that the court must give the words of a law their generally prevailing meaning (except that words which are words of art or technical terms must be given their technical meaning). La. Civ. Code art. 11. And when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. Civ.Code art. 12. Furthermore, the meaning of words or phrases may be ascertained by the words and phrases with which they are associated. Words of general meaning should be applied only to such classes of things of the same general kind as those specifically mentioned. Cox Cable New Orleans, Inc. v. City of New Orleans, 624 So.2d 890, 894 (La.1993). When the language is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. Civ.Code art. 10.
It is presumed that every word, sentence, or provision in the law was intended to serve some useful purpose; that some effect is to be given to each such provision; and that no unnecessary words or provisions were used. Sanchez v. Sanchez, 582 So.2d 978, 980 (La.App. 1st Cir. 1991). The meaning of a statute is to be interpreted by looking to all the sections taken together so that no section, clause, sentence or word becomes superfluous or meaningless. Barrilleaux v. NPC, Inc., 98-0728, p. 4 (La.App. 1st Cir.4/1/99), 730 So.2d 1062, 1065, writ denied, 99-1002 (La.5/28/99), 743 So.2d 672.
Finally, if a statute is not clear on its face, the meaning must be determined. Statutory interpretation is the province of the judiciary. The paramount consideration in interpreting a statute is ascertaining the legislature's intent and the reasons that prompted the legislature to enact the law. Southlake Development Co., 98-2158 at 4, 745 So.2d at 205.

ANALYSIS
At the outset, we note that the LTC's acknowledgment in its findings of *745 fact and reasons for decision that a clarification of the statute needed to be determined is self-defeating. As we have outlined, tax laws susceptible of more than one reasonable interpretation must be construed in favor of the taxpayer. The LTC recognizes and concedes that the statute is susceptible of more than one interpretation and the issue needs to be resolved. The LTC's arguments must fall; the uncertainty in the meaning of the word "consumer" in the statute must be resolved in favor of the taxpayer, Cleco. Moreover, the LTC's argument that because Cleco manufactures, generates and supplies electricity, it must be an electric power company, cannot withstand the statutory interpretation rules. Of course, all electricity manufactured or generated and supplied by any entity to any other entity will ultimately reach a consumer or consumers. However, we must assume that the legislature intended the words "consumers in this state" to have some particular meaning.[3] The LTC's argument completely ignores the phrase "to consumers in this state" found in the statute. As previously outlined in detail, every word or provision in the statute must be given some effect. It is presumed that no unnecessary words or provisions were used by the legislature.
Webster's Ninth New Collegiate Dictionary (1985) at 282, simply defines "consumer" as "[o]ne who consumes." "Consumer" is further defined in Black's Law Dictionary 286, (5th Ed. Rev.1979), as "[o]ne who consumes. Individuals who purchase, use, maintain, and dispose of products and services.... Consumers are to be distinguished from manufacturers (who produce goods), and wholesalers or retailers (who sell goods).... A buyer (other than for purposes of resale) of any consumer product, ..." Thus, the generally prevailing meaning of "consumer" is distinguishable from wholesalers and retailers. Cleco and the LTC concede that, Cleco supplies electricity to wholesalers, who in turn supply electricity to retailers, who then sell the electricity to the general public. The general public would be the "consumers" within the popular and prevailing meaning of the word. Since the legislature declined to specifically define the term "consumers" in the instant statute, we must apply the recognized meaning of the word. We are not at liberty to extend the definition of consumer beyond its clear import.
Therefore, even if the legislative history of the statute were consulted, the LTC's contention that electric wholesale generating businesses are meant to be included within the meaning of electric power companies is speculative, at best. Courts are not free to rewrite laws to effect a purpose that is not otherwise expressed. Cacamo v. Liberty Mut. Fire Ins. Co., 99-3479, p. 4 (La.6/30/00), 764 So.2d 41, 44.

CONCLUSION
The district court's reversal of the LTC ruling, that the new Cleco facility was not an electric power company as defined by the legislature, was correct. The manufacture, generation and supply of electricity to wholesalers and/or retailers of electricity is not a business primarily engaged in supplying electricity to "consumers in this state." Therefore, the Cleco facility is not subject to the provisions of the statute for ad valorem taxation of public service properties.
*746 For the reasons assigned, the judgment appealed from is affirmed. All costs of this appeal in the amount of $1,007.02 are assessed against the appellant, the Louisiana Tax Commission.
AFFIRMED.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] In Order No. U-23746 on March 25, 1999, the Louisiana Public Service Commission (LPSC) declined to exercise its regulatory jurisdiction over the new Cleco Evangeline facility. The LPSC determined that the Cleco Evangeline property should not be included in the valuation of the rate base for the regulated entity, Cleco Utility Group, Inc.
[3] Neither party has suggested that the qualifying words refer to domestic consumers as distinguished from out-of-state consumers.