GUIDRY, J.
' | gDefendants/Appellants, St. Mary Parish Sales and Use Tax Department and Barry Dufrene, in his capacity as the duly appointed Director of the St. Mary Parish Sales and Use Tax Department (collectively “the Department”), appeal from a judgment of the district court granting summary judgment in favor of plaintiff, GameStop, Inc., and ordering the Department to refund to GameStop the total amount that it paid under protest, plus interest and penalties. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
GameStop is a retailer that sells new and used video game hardware, software, and accessories to retail customers at stores located in St. Mary Parish, as well as other locations around the world. As part of its regular course of business, GameStop also accepts used games from its customers if it determines that the game is in a resalable or. refurbishable condition.[1] In these “trade-in” transactions, the customer can choose to: 1) receive cash for the video game; 2) trade-in the video game and apply the trade-in amount toward the purchase of another video game at GameStop; or 3) receive the determined trade-in amount for the video game on an “Edge Card” to be used by the customer at GameStop at a later date.[2]
An Edge Card is a stored value card, obtained by a customer for free when he/ she subscribes to Game Informer magazine, which can be loaded with the customer’s trade-in credit and may be used as payment for future purchases. An Edge Card resembles a credit card, and each Edge Card has a unique number that is found on the back of the card and is also contained within the card’s magnetic | ¡¡strip. When a customer purchases a new game and applies the trade-in credit contained on his or her Edge Card, GameStop collects sales tax on the sales price of the game, minus the trade-in amount.
The Department conducted an audit of the books and records of GameStop for the tax periods December 1, 2005, through December 31, 2007, and determined that GameStop owed additional taxes, interest, and penalties. The Department issued a notice of assessment pursuant to La. R.S. 47:337.51, assessing additional taxes allegedly due for the taxable periods in the *1093 amount of $5,258.21, plus interest in the amount of $2,545.32 and a penalty in the amount of $1,314.59. GameStop filed a written protest with the Department. Following a hearing on GameStop’s protest, the Department issued a revised notice of assessment, assessing additional taxes allegedly due in the amount of $5,258.00, plus interest in the amount of $2,860.84 and a penalty in the amount of $1,314.59.
Thereafter, GameStop paid the entire amount reflected in the revised notice of assessment to the Department under protest and notified the Department of its intention to file suit for the recovery of the entire protest ámount, plus interest. On September 9, 2011, GameStop filed a petition for declaratory judgment and refund of taxes and related amounts paid under protest. Specifically, GameStop sought a judgment declaring the rights and liabilities of GameStop and the Department with respect to the proper application of the trade-in credits in computing the taxable sales price for each of the sale transactions at issue during the taxable period; that the Department’s revised notice of assessment is erroneous, improper, illegal, and null and void; and that GameStop properly applied the trade-in credits at issue and properly computed the taxable sales price for each of the sales transactions at issue during the taxable period.
GameStop subsequently filed a motion for partial summary judgment, asserting that it is entitled to judgment as a matter of law: declaring that GameStop |4properly applied the trade-in credits relating to the Edge Card transactions at issue in this matter and properly calculated the taxable sales price and resulting sales tax owed for each of the Edge Card transactions; declaring that the Department’s assessment of additional sales tax in the amount of $1,533.67 and interest in the amount of $834.43, relating to the Edge Card transactions and the application of the trade-in credits, is erroneous, improper, illegal, and null and void; declaring that the penalty in the amount of $1,314.59 is erroneous, improper, illegal, and null and void; and ordering the Department to refund the entire amount of the additional sales tax and interest assessed by the Department, which is attributable to the Edge Card transactions, and the entire amount of assessed penalties.[3]
The Department also filed a motion for summary judgment, asserting that it is entitled to judgment as a matter of law: declaring that all of the transactions in which games were sold by GameStop and in which all or a portion of the sales price was paid with credits previously embedded on an Edge Card are fully taxable sales at retail of articles of tangible personal property, and that the sales tax due is calculated on the total sales price, without any reduction in the sales price; declaring that all sums paid under protest by GameStop are the property of the Department as the single sales and use tax collector in St. Mary Parish; and declaring that GameS-top’s suit be dismissed with prejudice.
Following a hearing on the cross-motions for summary judgment, the district court signed a judgment in favor of Gam-eStop, granting its motion for partial summary judgment. The district court declared: that GameStop properly applied the trade-in credits relating to the edge card transactions at issue in this matter; that GameStop properly calculated the taxable sales price and resulting St. Mary Parish sales tax for each of the Edge Card transactions at issue; and that the Department’s | ^assessment of additional St. Mary *1094 Parish sales tax in the amount of $1,533.67 and interest in the amount of $834.43, relating to the Edge Card transactions and the application of the trade-in credits, is erroneous, improper, illegal, and null and void. The judgment further ordered the Department to refund to GameStop the entire amount paid under protest in the amount of $3,682.69, consisting of St. Mary Parish sales tax in the amount of $1,533.67, interest in the amount of $834.43, and penalties in the amount of $1,314.59. The judgment ordered the Department to pay statutory interest on the refund amount at the rate and for the periods provided by law.[4]
The Department now appeals from the district court’s judgment.
DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Cooperative, Inc., 01-2956, p. 3 (La.App. 1st Cir.12/30/02), 836 So.2d 484, 486. A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2).
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the mattér that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that | f;there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Lieux v. Mitchell 06-0382, p. 9 (La.App. 1st Cir.12/28/06), 951 So.2d 307, 314, writ denied, 07-0905 (La.6/15/07), 958 So.2d 1199. When summary judgment is granted in the context of statutory interpretation, there are no material issues of fact in dispute and the sole issue before us is a question of law as to the correct interpretation of the statute at issue. State v. Louisiana Land and Exploration Company, 12-0884, p. 8 (La.1/30/13), 110 So.3d 1038, 1044.
In interpreting statutes, we begin with the well-settled premise that taxing statutes must be strictly construed against the taxing authority, and where a tax statute is susceptible of more than one reasonable interpretation, the construction favorable to the taxpayer is adopted. Cisco Evangeline, LLC v. Louisiana Tax *1095 Commission, 01-0561, p. 5 (La.App. 1st Cir.6/22/01), 808 So.2d 740, 744, aff'd, 01-2162 (La.4/3/02), 813 So.2d 351. Tax laws are to be interpreted liberally in favor of the taxpayer, and words defining things to be taxed should not be extended beyond their clear import. Uncertainty in the language of the statute must be resolved against the government and in favor of the taxpayer. Cleco Evangeline, LLC, 01-0561 at p. 5, 808 So.2d at 744.
The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the Legislature _J_jto enact the law. McLane Southern, Inc. v. Bridges, 11-1141, p. 6 (La.1/24/12), 84 So.3d 479, 483. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. McLane, 11-1141 at p. 6, 84 So.2d at 483.
The starting point in the interpretation of any statute is the language of the statute itself. Anthony Crane Rental, L.P. v. Fruge, 03-0115, p. 5 (La.10/21/03), 859 So.2d 631, 634. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation shall be made in search of the intent of the legislature. La. C.C. art. 9. This principle applies to tax statutes. McLane, 11-1141 at p. 6, 84 So.3d at 483.
It is a recognized rule of statutory construction that the court must give the words of a law their generally prevailing meaning (except that words of art or technical terms must be given their technical meaning). La. C.C. art. 11; Cleco Evangeline, LLC, 01-0561 at p. 5, 808 So.2d at 744. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12. When the language is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10.
The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the Legislature in enacting it. Black v. St. Tammany Parish Hospital, 08-2670, pp. 9-10 (La.11/6/09), 25 So.3d 711, 717. The statute must, therefore, be applied and interpreted in a manner that is consistent with logic and the presumed fair purpose and intention of the Legislature in enacting it. Black, 08-2670 at p. 10, 25 So.3d at 717.
|sThe sales taxes at issue in the instant case are levied upon the “sales price” of each item or article of tangible personal property sold at retail by GameS-top in St. Mary Parish. See La. R.S. 47:302(A). “Sales price” is defined in La. R.S. 47:301(13)(a) as “the total amount for which tangible personal property is sold, less the market value of any article traded in.”[5] Thus, La. R.S. 47:301(13)(a) specifically excludes from the determination of sales price the market value of any article traded in. See Harrah’s Bossier City Investment Company, LLC v. Bridges, 09-1916, p. 10 (La.5/11/10), 41 So.3d 438, 446 (defining an exclusion). The statute, however, does not define “trade in” or set forth any time frame within which such trade in must occur.
A “trade in” is commonly defined as “merchandise [that is] accepted as par *1096 tial payment for a new purchase.” Merriam-Webster’s New College Dictionary 1195 (3rd ed.2008). In the instant case, GameStop has established a system whereby it accepts items from a customer, i.e. video game software and/or hardware; determines the trade in value of those items; and places the trade in value of those items on the customer’s Edge Card, to be used by the customer toward the purchase of a new item at GameStop at a later date. The credits on the Edge Card can only be used by the customer toward the purchase of items at GameStop, and the credits are subject to a separate accounting and are separate and distinct from any other form of payment. Therefore, keeping in mind that the term “trade in” must be liberally construed in favor of the taxpayer and against the Department, we find that Gam-eStop’s unique system of accepting items from a customer and storing the value of those items on an Edge Card for use as partial payment toward a future purchase at GameStop comes within the generally prevailing meaning of “trade in” for purposes of La. R.S. 47:301(18)(a).
^Furthermore, the plain language of La. R.S. 47:301(13)(a) does not restrict the timing of the trade in nor does it suggest that a trade in must occur simultaneously with the sale. Rather, La. R.S. 47:301(13)(a) merely states that the sales price is to be based on the total amount for which tangible personal property is sold, less the market value of any article traded in. Words defining a tax should not be extended beyond their clear import. UTELCOM, Inc. v. Bridges, 10-0654, p. 7 (La.App. 1st Cir.9/12/11), 77 So.3d 39, 47, writ denied, 11-2632 (La.3/2/12), 83 So.3d 1046. Therefore, to the extent that a trade in occurs when GameStop accepts a customer’s merchandise and stores the predetermined market value of the item and/or items on an Edge Card, we find the subsequent application of the market value of the trade in by the customer toward the purchase of a new item of tangible personal property at GameStop comes within the statutory exclusion from sales price found in La. R.S. 47:301(13)(a).[6]
Therefore, we find that the market, value of items traded in, as contained on an Edge Card, can be excluded from the sales price of the item to which the value is subsequently applied, and GameStop was correct in calculating the sales tax owed to the Department based on the sales price of the items, minus the Edge Card credit amount.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the district court. All costs of this appeal in the amount of $2,279.50 are assessed to St. Mary Parish Sales and Use Tax Department and Barry Dufrene, in his Capacity as the Duly | inAppointed Director of the St. Mary Parish Sales and Use Tax Department.
AFFIRMED.

. GameStop also accepts used hardware and accessories; however, only transactions involving the acceptance of used video games are at issue in the instant case.

. The market value of an item traded-in is pre-determined and based on a proprietary GameStop formula. However, if the customer elects to receive cash for his trade-in, the determined trade-in amount is reduced by twenty percent. If the customer has an Edge Card, the trade-in amount is increased by ten percent.

. For purposes of the instant matter, GameS-top only disputes the amount of taxes and related interest attributable to the Edge Card transactions and penalties, which total protest amount equals $3,682.69.

. The judgment also contains a designation that the judgment is certified as a final judgment for purposes of appeal purposes pursuant to La. C.C.P. art. 1915(B) after determining that there is no just reason for delay. Based on our de novo review of the matter, we find that the trial court properly certified the judgment as final for purposes of an immediate appeal. See R.J. Messinger. Inc. v. Rosenblum, 04-1664, pp. 14-15 (La.3/2/05), 894 So.2d 1113, 1122-1123.

. Although the sales tax at issue is a local sales tax, the definition of "sales price" has the same meaning as that provided for in La. R.S. 47:301. See La. R.S. 47:337.6(B).

. The Department relies on LAC 61:1.4301 in support of its argument that the trade in must occur simultaneously with the sale. However, as we have noted, the statutory language contains no language regarding the timing of the trade in. Tax regulations cannot extend the taxing jurisdiction of the statute, as taxes are imposed by the legislature, not the Department. See UTELCOM, Inc., 10-0654 at p. 9, 77 So.3d at 49. By requiring the transfer of ownership of the trade in to occur simultaneously with the sales transaction, the Department’s regulation impermissibly expands the scope of La. R.S. 47:301 (13)(a). See UTELCOM, Inc., 10-0654 at p. 10, 77 So.3d at 49. Therefore, we find the Department’s reliance on LAC 61:1.4301 to be misplaced and its argument on this issue to be without merit.'