HIGGINBOTHAM, J.'
I «This case presents a res nova issue involving a statutory interpretation of the Louisiana alternative fuel tax,credit found at La. R.S. 47:6035. The Louisiana Department of Revenue (“LDR”), through its Secretary, Tim Barfield, appeals a judgment of the district coqrt affirming the Louisiana Board of. Tax Appeals .(“BTA”) and permitting the tax credit in favor of Terry and Gwen Bolotte (“the Bolottes”).
FACTS AND PROCEDURAL BACKGROUND
The Bolottes purchased a 2011 Ford F-150 pickup truck in November: 2011. The vehicle is known as a Flex Fuel Vehicle (“FFV”), capable of running on either gasoline or a mixture of gasoline and ethanol commonly referred tó as E85. After learning about a Louisiana tax credit purportedly applying to purchases of vehicles that operate on alternative fuels, the Bo-lottes filed -an amended tax return concerning their individual taxes for 2011 on June 16, 2012.’ In their amended return, the Bolottes sought a $3,000.00 credit for the purchase Of their FFV in 2011.
By letter dated March 20, 2013, the LDR denied, the Bolottes’ requested tax credit refund. Following the denial, the Bolottes filed an appeal with the BTA on April 29, 2013. After a: hearing before the BTA on January 23, 20Í4,. where evidence was admitted and expert witness testimony was allowed, the BTA ruled in favor of the Bolottes, ordering the LDR to issue a *784 tax credit refund to the Bolottes. The LDR filed a petition for judicial review of the BTA decision, at the 22nd Judicial District Court on June 11, 2014, and the district court affirmed the BTA decision on January 16, 2015. This appeal by the LDR followed, asserting errors that revolve around the BTA’s statutory interpretation of the alternative fuel tax' credit found at La. R.S. 47:6035, as well as the BTA’s interpretation of the LDR’s regulation, LAC 61:1.1913, that was apparently written in an attempt to clarify the tax credit issue. Conversely, the Bolottes urge this court to affirm the BTA’s decision.- ’•
\ ¿AMICUS CURIAE BRIEF
Pursuant to Uniform Rules — Courts of Appeal,' Rule 2-12.11, and on behalf of the Bolottes’ position, a law firm that was not involved in the Bolottes’ case below, Breazeale, Sachse & Wilson, L.L.P. (“law firm”), filed a motion for leave to file an amicus curiae brief with attachments in this court.[1] The LDR filed an opposition to the law firm’s pending motion.
The law firm ostensibly represents several unidentified clients with similar tax credit claims currently pending before ,the BTA and thus, the law firm and their clients are very interested in the outcome of the Bolottes’ appeal. While our review of the motion reveals the law firm’s clients, have an obvious interest in the outcome of this case, we find that the law firm’s motion does not meet the basic requirement of stating specific reasons why the amicus curiae brief would be helpful to or aid this court in deciding the instant appeal. Instead, the law firm offers general “experience as a friend of the court” without any indication regarding their aid or -any suggestion that current counsel and the parties represented in the instant lawsuit will somehow not sufficiently present all relevant legal arguments on appeal. - We also note that the law firm’s amicus curiae brief raises issues and theories of law that were not considered by the BTA or district court and have not been raised by the parties involved in this appeal. The law is well settled that issues not raised by the parties cannot be raised by amicus curiae on appeal. Banker’s Ins. Co. v. Kemp, 96-0469 (La.App. 1st Cir.12/20/96), 686 So.2d 111, 114; U.S. Fidelity & Guaranty Co. v. Victory Land Co., Inc., 410 So.2d 359, 361 (La.App. 4th Cir.), writ denied, 412 So.2d 1113 (La.1982). Thus, wé deny the law firm’s motion for | ¿leave to file an amicus curiae brief. Having decided that the law firm’s brief will not be allowed, we now consider the merits of this appeal.
STANDARD OF REVIEW
We review this case as the second court of appellate review. At the time that the LDR sought judicial review, the district court was vested with the power of first appellate review of all BTA decisions.[2] See La. Const. art. 5, § 16(B); La. R.S. 47:1434-35 (prior to 2014 amendment). The ruling of the district court is subject *785 to appellate review by appeal to this court in the exercise of its appellate jurisdiction over civil matters. See La. Const. art. 5, § 10(A); La. R.S. 47:1435 (prior to 2014 amendment). See also DaimlerChrysler Services of North America, L.L.C. v. Secretary, Dept. of Revenue, 2007-0010 (La.App. 1st Cir.9/14/07), 970 So.2d 616, 619, writ denied, 2007-2374 (La.2/1/08), 976 So.2d 725.
Judicial review by the district court of a BTA decision must be rendered upon the record made up: before the BTA and is limited to facts on the record and questions of law. Crawford v. American National Petroleum Co., 2000-1063. (La.App. 1st Cir.12/28/01), 805 So.2d 371, 377. The BTA’s findings of fact- should .be accepted where there is substantial evidence in the record to support them and should not be set aside unless they are manifestly erroneous in view of the evidence in the entire record. Id. Additionally, when the assignments of error reflect that, the main issue involves a purely legal question regarding the proper interpretation of a statute, our review is de novo in the sense that we give no deference to the factual findings or legal conclusions of the tribunals below. We are free to make our own determinations of the correct legal meaning of the appropriate statutes and render judgment on the recor'd. Cleco Evangeline, L.L.C v. Louisiana Tax Commission, 2001-0561 (La.App. 1st Cir.6/22/01), 808 So.2d 740, 743, aff'd, 2001-2162 (La.4/3/02), 813 So.2d 351; Southlake Development Co. v. Secretary of Dept. of Revenue and Taxation for State of La., 98-2158 (La.App. 1st Cir.11/5/99), 745 So.2d 203, 205, writ denied, 99-3405 (La.2/4/00), 754 So.2d 235. Further, the judgment of the BTA should be affirmed if the BTA has correctly applied the law and has adhered to the correct procedural standards. Crawford, 805 So.2d at 377.
STATUTORY INTERPRETATION
In interpreting statutes, We begin with the well-settled premise that taxing statutes must be strictly construed against the taxing authority, and where a tax statute is susceptible of more than one reasonable interpretation, the construction favorable to the taxpayer is adopted. Cleco Evangeline, 808 So.2d at 744. Likewise; exemptions from taxation or tax credits that relieve a tax burden are strictly construed and must be clearly, unequivocally, and . affirmatively established. Southlake Development, 745 So.2d at 206. Therefore, tax laws are to be interpreted liberally in favor of the taxpayer, and words defining things to be taxed should not be extended beyond their clear import. Cleco Evangeline, 808 So.2d at 744, Uncertainty in the language .of the statute must be resolved against the taxing authority and in favor of the taxpayer. Id.
The fundamental question in all cases , of statutory interpretation is legislative intent and the ascertainment of the reasons that prompted the Legislature to enact the law. McLane Southern, Inc. v. Bridges, 2011-1141 (La.1/24/12), 84 So.3d 479, 483. The starting point in the interpretation of any statute is the language of the statute itself. Anthony Crane Rental, L.P. v. Fruge, 2003-0115 (La.10/21/03), 859 So.2d 631, 634. When a tax law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation shall be made in search of legislative intent. See La. Civ. Code art. 9; McLane Southern, 84 So.3d at 483. If a statute is not clear on its face, the ^meaning must be determined by the judiciary, by examining the legislative history of the statute and related legislation. See Southlake Development, 745 So.2d at 205-06. Laws are presumed to be passed with *786 deliberation and with -full knowledge of all existing ones on the same- subject. We give harmonious effect to all acts on a subject when reasonably possible. Southlake Development, 745 So.2d at 206.
LAW AND ANALYSIS
The alternative fuel tax credit statute at issue is found at La. R.S. 47:6035, as it existed when the Bolottes purchased their FFV in 2011, the taxable year at issue. See La. R.S. 47:6035(0 (“The credit .. shall be allowed ... for the taxable period in which the property is purchased]!]”) At the outset, we clarify that the relevant version of the statute is not the 2013 amended version, because those amendments were only effective as of June 10, 2013, for one part and for taxable years beginning on or after January 1, 2014, for another part.[3] See 2013 La. Acts 219, § 1, and 2013 La. Acts 427, § 2. The original alternative fuel tax credit statute, La. R.S. 47:38, was enacted in 1991, but was repealed when La; R.S. 47:6035 was enacted in 2009, by 2009 La. Acts 469, § 1. The effective date of La. R.S. 47:6035 was July 9, 2009, with a specific retroactive application expressly making the provisions of the Act “applicable to amounts paid by the
taxpayer on and after January 1, 2009.”[4] See 2009 La. Acts 469, § 3.
lain 2011, La. R.S. 47:6035 was titled “Tax credit for conversion of vehicles to alternative fuel usage” and provided, with emphasis added:
A. The intent of this Section is to provide an incentive to persons or corporations to invest in qualified clean-burning motor vehicle fuel - property. 1 Any person or corporation ■purchasing such property as specified in this Section shall be allowed a credit against, income-tax liability as deter- ■ mined pursuant to Subsection C of this Section.
B. As used in this Section, the following words and phrases shall have the meaning ascribed to them in this Subsection unless the context clearly indicates otherwise:
(1) “Alternative fuel” means a fuel which results in emissions of oxides of nitrogen, volatile organic compounds, carbon rrionoxide, or particulates, or Any combination of these which are comparably lower than emissions from gasoline or diesel and which meets or exceeds federal clean air stan- *787 dárds, including but not limited to compressed natural gas, liquefied natural gas, liquefied petroleum gas, biofuel, biodiesel, methanol, ethanol, and electricity.
(2) “Cost of qualified clean-burning motor vehicle fuel property” shall mean any of the following:
(a) The retail cost paid by the owner of a motor vehicle for the purchase - and installation by a technician of qualified clean-burning motor vehicle fuel property certified by the United States Environmental Protection Agency to modify a motor vehicle which is propelled by gasoline or diesel so that the motor vehicle may be propelled by an alternative fuel, provided the motor vehicle is registered in this state. .
(b) The cost to the owner of a new motor vehicle purchased at retail originally equipped to be propelled by an alternative fuel for the cost of that portion of the motor vehicle which is attributable to the storage of the alternative fuel, the delivery , of the. alternative fuel to the engine of the motor vehicle, and the exhaust of gases from combustion of the alternative fuel, provided the motor vehicle is registered in this state.
(c) The cost of property which is directly related to the delivery of an alternative fuel into the fuel tank of motor vehicles propelled by alternative fuel, including compression equipment, storage tanks, and dispensing units for alternative fuel at the point where the fuel is delivered, provided the property is installed and located in this state and no credit has been previously claimed on the cost of such proper- ■ ty. - The cost -of property which is directly related to the delivery of an alternative fuel into the fuel tank of • motor vehicles propelled by alternative fuel shall not include costs in- • elude costs ^associated with exploration and development activities necessary for severing natural resources from the soil or ground.
(3) “Qualified clean-búrning motor vehicle fuel property” shall mean equipment necessary for a motor vehicle to operate on an alternative fuel ahd shall not include equipment necessary for operation of a motor vehicle on gasoline or diesel.
C. The credit provided for in Subsection A of this Section shall be allowed against individuar or corporate income tax for the taxable period in which the property is purchased and installed, if applicable, and shall be equal to fifty percent of the cost of the qualified clean-burning motor vehicle fuel property.
D. In cases where no previous credit has been claimed pursuant to Subsection C of this Section for the cost of qualified clean-burning motor vehicle fuel property in a new motor vehicle purchased by a taxpayer with qualified clean-burning motor vehicle fuel property installed by the vehicle’s manufacturer and the taxpayer is unable to, or'elects not to determine the exact cost which is attributable to such property, the taxpayer may claim a credit against individual or corporate income tax for the taxable period in which the motor vehicle is purchased equal to ten percent of the cost of the motor vehicle or three thousand dollars, whichever is less, provided the motor vehicle is registered in this-state.
*788 E. -If the tax credit allowed pursuant to . the provisions of this Section exceeds the amount of income taxes due or if the taxpayer owes no state income taxes, any excess of the tax credit over the income tax liability against which the credit can be applied shall constitute an overpayment, as • defined in R.S. 47:1621(A), and the secretary shall make a refund of the overpayment from the current collections of the taxes imposed by Chapter 1 of Subtitle II of this Title, as amended. The, right to a refund of any overpayment shall not be subject to the requirements of R.S. 47:1621(B).
F. A husband and wife who file separate returns for a taxable year in which they could have filed a joint return may each claim only one half of the tax credit that would have been allowed for a joint return.
G. The secretary of the Department of Revenue in consultation with the secretary of the Department of Natural Resources shall promulgate rules and regulations in accordance with the Administrative Procedure Act as are necessary to implement the provisions of this Section.
The intent of the' alternative fuel tax credit statute is clearly written at the beginning of the statute: “to provide an incentive to persons .,. to invest in qualified clean-burning motor vehicle fuel property!;,]” and “any person” who purchases such Improperty “shrill be allowed a credit against income tax liability.” See La. R.S. 47:6035(A). Thus, we must consider the statute’s definition of “qualified clean-burning motor vehicle fuel propertyt,]” which means “equipment necessary for a motor vehicle to operate on an alternative fuel and shall not include equipment necessary for operation of a motor vehicle on gasoline or diesel.” See La. R.S. 47:6035(B)(3).
The LDR initially interpreted' the alternative fuel tax credit statute to include the purchase of FFVs that can be operated on both gasoline and a mixture of gasoline and ethanol,.known as E85.[5] In response to a rapid increase in the number of tax return filings-claiming the alternative fuel tax credit, the LDR issued a declaration of emergency rule on April 30, 2012, “to clarify the existing statute.” Attached to the declaration was a list of approved vehicles, including FFVs that operate on E85 fuel, similar to-the one purchased by the Bo-lottes. According to the parties’ briefs, the emergency rule was voided on June 14, 2012, for procedural reasons, prompting the LDR to announce that it would only honor and allow-alternative fuel tax credit claims that had been postmarked on or before June 14, 2012. The Bolottes’ tax credit claim was filed on June 16,2012, two days past the LDR’s announced deadline.
In December' 2012, before the LDR formally denie'd the Bolottes’ tax credit claim by letter dated March 20, 2013, the LDR promulgated a regulation found at LAC 61:1.1913, and titled “Alternative Fuel Tax Credit.” In that regulation, the LDR’s position was stated in paragraph (B)(2) as follows':
B. The alternative fuel tax credit is available for:
⅜ ⅜' 1 *'
. 2. a portion of the cost of a new vehicle that is capable of being propelled by an alternative fuel. If the vehicle has the capability of being propelled by petroleum gasoline or petroleum diesel, *789 the vehicle must have a separate fuel storage and delivery system for the alternative fuel that is capable of using only the alternative fuel[.] [Emphasis added.]
hiFollowing the promulgation of this regulation, the Legislature amended the statutory language of La. R.S. 47:6035 -in June 2013. The 2013 amendment of . La. R.S. 47:6035(C)(l)(b) expressly disallows the alternative fuels tax credit for FFVs that are designed to run on alternative fuel and gasoline or diesel if the FFV has ■ only a single fuel storage and delivery system and retains the capability to be propelled by gasoline or diesel. The 2013 amendment also eliminated ethanol based fuels from the list of qualifying alternative fuels. See La. R.S. 47:6035(B)(1), as amended in 2013. While we recognize that the Legis-, lature’s 2013 statutory amendment was obviously intended to eliminate purchases of FFVs like the Bolottes’ FFV from eligibility for the tax credit, that change in the law was not effective until January 1, 2014, for Paragraph (B)(1) and on June 10, 2013, for Paragraph (C)(1)(b). Prior to that time, however, FFVs that had equipment “necessary” to operate on ethanol based alternative fuels such as E85 were not automatically excluded from the alternative fuel tax credit statute.
The LDR does not. appear to dispute any of the facts. Instead, relying on its own clarifying regulation, the LDR contends that the BTA’s interpretation of the tax credit statute was legally incorrect, because the statute specifically, excludes equipment that is necessary for operation of a. vehicle on- gasoline or diesel, and the Bolottes’ FFV uses all of the same equipment when it operates on gasoline and E85 fuel.[6] However, the LDR is relying on a regulation that is inconsistent with the pertinent version of the alternative fuel tax credit statute, which does not contain any exclusion for FFVs or require separate, or different, or additional equipment for | ^operation only alternative fuels, as opposed to gasoline. An administrative agency’s construction of its own regulation cannot be given effect where it is contrary to or inconsistent with the legislative intent of the applicable statute. See BP Products North America, Inc. v. Bridges, 2010-1860 (La.App. 1st Cir.8/10/11), 77 So.3d 27, 31, writ denied, 2011-1971 (La.11/14/11), 75 So.3d 947. Thus, the LDR’s reliance on the elimination of FFVs from qualification for the alternative fuel tax credit is misplaced, and in the Bolottes’ ease, it is also premature.
Until taxable years beginning January 1, 2014, purchases'' of FFVs such as the one purchased by the Bolottes were eligible for the alternative fuel tax credit. The Bo-lottes submitted sufficient evidence of their 2011 purchase of a qualified vehicle that contained equipment necessary to operate on an alternative fuel.[7] Further, the Bo- *790 lottes opted to- not determine the exact cost attributable to such equipment and instead, they claim the $3,000.00 credit allowed by the statute in Paragraph (D). We find that the BTA ruling in favor of the Bolottes was legally correct and consequently, we agree with the district court’s judgment affirming the BTA’s decision.
CONCLUSION
For the stated reasons, in addition to those previously articulated by the Louisiana Board of Tax Appeals, the judgment of the district court is hereby affirmed. All costs of this appeal, in the amount of $2,360.59, are assessed against the State of Louisiana Department of Revenue, through its Secretary, Tim Barfield.
MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF DENIED; DISTRICT COURT JUDGMENT AFFIRMED.
CRAIN, J., dissents and assigns reasons.

. Uniform Rules-Courts of Appeal, Rule 2-12.11, provides in pertinent part, that amicus curiae briefs may be filed only upon motion and order of the court, and that the "motion shall identify the interest of the applicant, ... and state specific reasons why [the amicus ] brief would be helpful to the court in deciding the [case].”

, While at the time of the LDR's petition, La. R.S. 47:1435 provided that judicial review of BTA decisions-was to be brought in the district courts, we note that La. R.S, 47:1435 was amended by 2014 La, Acts No. 198, § 1, effective July 1, 2014, to give courts of appeal the exclusive jurisdiction to review decisions of the BTA.. The amendment does not apply, however, in this instance.

. Louisiana Revised Statute 47:6035 was . amended by 2013 La. Acts 427, § 1, resulting in a change in the law in paragraph B(l), providing in pertinent part that, "[a]lternative fuel” includes' "any nonethanol- based advanced biofuel,” The statute was also amended by 2013 La. Acts 219, § 1, effective June 10, 2013, adding paragraph C(l)'(b) to disallow a tax credit for purchases of FFVs that are "designed to run on an alternative fuel and either petroleum gasoline or petroleum diesel if the vehicle has only a single fuel storage and delivery system and retains the • capability to be propelled by petroleum gasoline or petroleum diesel.” Section 2 of Act 427 specifically stated that the "provisions of this Act shall be applicable for taxable years beginning on or after January 1, 2014." (Emphasis added.) It is significant- that Act 427 includes a delayed effective date, because as has been observed by the Louisiana Supreme Court, "the mere inclusion of this type of [delayed effective date] provision in a legislative enactment evidences a clear legislative intent that the enactment be given prospective application.” St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 817 (La.1992), quoting Cole v. Celotex Corp., 599 So.2d 1058, 1064-65 (La.1992).

. The enactment of La. R.S. 47:6035 in 2009 also had the express purpose of repealing older versions of the tax credit found in former La. R.S. 47:38. La. R.S. 47:287.757, and La. R.S. 51:2458(2). See 2009 La. Acts 469, § 2.

. The LDR issued a Revenue Information Bulletin, No. 12-025, on May 3, 20Í2, expressly stating that the statute does not prohibit FFVs or E85 FFVs from qualifying for the alternative fuel tax credit. However, the bulletin was later repealed on December 3,-2012.

. The LDR also relies on the opinion of its expert witness, Erin B. Higinbotham, that while FFVs operate on an ethanol based fuel, E85, that particular fuel does not qualify as an alternative fuel as defined by the statute. We note that the ,BTA, as .the trier of fact, was free to accept or reject, in whole or in part, the opinion testimony expressed by an expert as to ultimate facts, based upon the other admissible evidence. See Normand v. Cox Communications Louisiana, L.L.C., 2014-563 (La.App. 5th Cir. 12/23/14), 167 So.3d 156, 163, writ denied, 2015-0158 (La.4/10/15), 163 So.3d 815; Holmes v. Southeastern Fidelity Ins. Co., 422 So.2d 1200, 1203-04, (La.App. 1st Cir.1982), writ denied, 429 So.2d 133 (La.1983). The BTA obviously rejected the expert's opinion, and we find no abuse of discretion in that rejection.

. It is noteworthy that the LDR’s expert witness, admitted that the only way for FFVs to operate on ethanol based fuel is to have special parts that are modified to tolerate the corrosive effects of ethanol, and would not be *790 necessary if the vehicle only operated on gasoline.