STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CA 0972

CORA-TEXAS MFG. CO., INC.

VERSUS

KIMBERLY L. ROBINSON, SECRETARY, DEPARTMENT OF
REVENUE, STATE OF LOUISIANA

*Judgment Rendered:* **APR 1 6 2021**

********

Appealed from the Louisiana Board of Tax Appeals
State of Louisiana
Docket #11065

The Honorable Tony Graphia (ret.), Chairman, and Board Members Cade R.
Cole and Francis J. "Jay" Lobrano, Presiding

********

John B. Davis
Gregory E. Bodin
Robert L. Blankenship
Baton Rouge, Louisiana

Counsel for Plaintiff/Appellant
Cora-Texas Mfg. Co., Inc.


Adrienne D. Quillen
Antonio C. Ferachi
Aaron B. Long
Christopher Brault
Baton Rouge, Louisiana

Counsel for Defendant/Appellee
Kimberly L. Robinson, Secretary
Department of Revenue, State of
Louisiana

********

BEFORE: GUIDRY, McCLENDON, AND LANIER, JJ.

McClendon, J. Concurs.

**LANIER, J.**

Cora-Texas Mfg. Co., Inc. ("Cora") appeals a judgment of the Louisiana Board of Tax Appeals ("the Board") which refunded taxes paid by the appellant to the appellee, the Louisiana Department of Revenue ("LDR"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Cora is a sugar cane milling and sugar manufacturing company located in White Castle, Louisiana. On December 27, 2017, Cora petitioned the Board to review LDR's demand for remittance of an alleged overpaid refund and denial of Cora's resubmission of a refund claim involving the manufacturing machinery and equipment (MM&E) tax exclusion.[1] In the tax year of 2013, Cora received a tax refund in the amount of $115,933.74 pursuant to the MM&E exclusion, which LDR later reduced by $19,635.16, due to what Cora alleged to be some "erroneous disallowances." Cora filed a resubmit refund claim in the amount of $19,635.16.

After a review, LDR refunded $19,538.82 to Cora pursuant to the MM&E exclusion. Cora still claimed that the withheld difference of $96.34 was due to certain "erroneous disallowances." Upon further review, LDR determined that $10,887.52 was refunded in error based on a misapplication of the MM&E exclusion. Of that amount, LDR demanded a remittance of $10,864.55, plus interest, for a total amount of $11,042.92.

Cora alleged in its petition that LDR was unfamiliar with the customary business activities of a sugar mill and therefore did not properly apply the MM&E exclusion to the sugar mill's operations. Despite Cora's invitations to LDR to visit the mill and become familiar with the mill's operations as they relate to the MM&E exclusion LDR made no such visit. Cora claimed it was entitled to a

---

[1] "MM&E" is a collective term for various definitions of machinery and equipment that meet the criteria of tax exclusion under La. R.S. 47:301.

2

refund of $19,538.82 for the tax year of 2013, but that it never received a notice of the disallowance of its refund claim, which is required by La. R.S. 47:1625.[2]

Additionally, Cora claimed that for the tax years of 2014 to 2016, it was issued a total tax refund in the amount of $700,589.34. For the period of January 2014 to March 2016, LDR issued a total refund of $238,802.12 (including interest), despite Cora making a refund claim of $433,487.94. Cora alleged the reduced refund was largely due to "erroneous disallowances." For the period of April 2016 to December 2016, Cora had made a refund claim of $267,101.38, but LDR issued a total refund of $123,314.82 (including interest). Again, Cora alleged "erroneous disallowances."

Cora made a resubmit refund claim of $195,974.92 for the period of January 2014 to March 2016, but LDR reduced that claim by $183,452.69. Cora alleged that LDR misapplied the MM&E exclusion in reducing the refund claim. For the period of April 2016 to December 2016, Cora made a resubmit refund claim of $144,495.87, but LDR reduced that claim by $138,417.47. Again, Cora alleged that LDR had misapplied the MM&E exclusion in reducing the refund claim. In total, LDR refunded Cora $18,569.78 for the tax years of 2014 to 2016, although Cora had claimed a total resubmit refund of $340,470.79. Cora alleged that LDR had made a deficient refund due to its lack of knowledge of Cora's business operation and how the MM&E exclusion applied to them. Cora claimed that it was entitled to the full resubmit refund of $340,470.79, and that LDR had failed to comply with the written disallowance notice requirement of La. R.S. 47:1625.

In summation, for the tax year of 2013, Cora claimed it was entitled to a total refund of $19,538.82, and that LDR's demand for remittance of an

---

[2] Louisiana Revised Statutes, 47:1625(B) states, in pertinent part: "A notice of disallowance, if issued, shall inform the taxpayer that he has sixty days from the date of the certified or registered mailing of that notice to appeal to the Board of Tax Appeals." LDR filed a peremptory exception raising the objection of prescription, which the Board denied.

3

overpayment of $11,042.92 should be dismissed. For the tax years of 2014 to 2016, Cora claimed it was entitled to the full resubmit refund of $340,470.79.

A hearing on the merits was held before the Board on May 14, 2019 and August 13, 2019. The Board heard testimony from an auditor from LDR, an employee of Cora, and an expert retained by Cora. Numerous invoices and data itemizing Cora's expenses during the relevant tax periods were also submitted to the Board. On February 12, 2020, the Board issued judgment in favor of Cora in the total amount of $14,946.49. Unsatisfied with the award, Cora now appeals.

## ASSIGNMENTS OF ERROR

Cora cites the following assignments of error:

1. The Board erred in finding the refund claims for trucks and trailers are taxable and not eligible for the MM&E exclusion. The Board reached its decision by ignoring the undisputed evidence that the manufacturing process of sugar begins when the harvesters cut the cane in the field— before the cut cane is deposited into the trailers. In doing so, the Board erred in finding that the trucks and trailers are not used during the manufacturing process that was already underway, despite recognizing that the trucks and trailers are integral to the manufacturing process of raw sugar.

2. The Board erred in finding certain items to be non-depreciable repairs and thus not falling under the MM&E exclusion when these items are restorations of the mill's equipment that can be depreciated and meet all of the requirements of the statute. As required by the MM&E statute, these items are (1) equipment or a component part of equipment; (2) with an expected useful life beyond one year; and (3) an integral part of Cora's manufacturing process. Therefore, these items fall under the MM&E exemption and are excluded from sales tax.

## STANDARD OF REVIEW

Judicial review of a decision of the Board is rendered upon the record as made up of before the Board and is limited to facts on the record and questions of law. The Board's findings of fact should be accepted where there is substantial evidence in the record to support them and should not be set aside unless they are manifestly erroneous in view of the evidence of the entire record. *International Paper, Inc. v. Bridges*, 2007-1151 (La. 1/16/08), 972 So.2d 1121, 1127-28. When

4

the assignments of error reflect that the main issue involves a purely legal question regarding proper interpretation of a statute, our review is *de novo* in the sense that we give no deference to the factual findings or legal conclusions of the Board. We are free to make our own determinations of the correct legal meaning of the appropriate statutes and render judgment on the record. *Barfield v. Bolotte*, 2015-0847 (La. App. 1 Cir. 12/23/15), 185 So.3d 781, 785, writ denied, 2016-0307 (La. 5/13/16), 191 So.3d 1058.

## DISCUSSION

In interpreting statutes, we begin with the well-settled premise that taxing statutes must be strictly construed against the taxing authority, and where a tax statute is susceptible of more than one reasonable interpretation, the construction favorable to the taxpayer is adopted. Likewise, exemptions from taxation or tax credits that relieve a tax burden are strictly construed and must be clearly, unequivocally, and affirmatively established. *Barfield*, 185 So.3d at 785. Therefore, tax laws are to be interpreted liberally in favor of the taxpayer, and words defining things to be taxed should not be extended beyond their clear import. Uncertainty in the language of the statute must be resolved against the taxing authority and in favor of the taxpayer. *Id.*

*Trucks and Trailers*

Cora argued that the trucks and trailers used to transport cut cane to the sugar mill are an integral part of the sugar manufacturing process and therefore should not be taxed due to the MM&E exclusion. Through the testimony of its witnesses, Cora attempted to explain that once the sugar cane stalk is cut into approximately one foot-long segments called "billets," the internal sucrose, which is later made into raw sugar, comes into contact with bacteria that changes the sucrose into dextran. Dextran is an unusable byproduct that cannot be made into raw sugar, and the longer it takes to transport the billets from the field to the mill,

5

the more sucrose is changed into dextran. If the billets are not milled within 24 hours, enough sucrose is lost that the cane diminishes in value, and past 72 hours, the billets are completely worthless. For this reason, Cora argues, the transport of the billets from the field to the mill is an integral step in the manufacturing process.

Louisiana Revised Statutes 47:301(3)(i)(ii)(aa) states that "machinery and equipment" means tangible personal property or other property that is eligible for depreciation for federal income tax purposes and that is used as an integral part in the manufacturing of tangible personal property for sale, or that is used as an integral part of the production, processing, and storing of food and fiber or of timber. Louisiana Revised Statutes 47:301(3)(i)(ii)(aa)(II)(ccc) expressly excludes from the "machinery and equipment" definition "[t]angible personal property used to transport raw materials or manufactured goods prior to the beginning of the manufacturing process or after the manufacturing process is complete."

According to the testimony of Tammy Hinds, an employee of LDR who audited Cora, the manufacturing of raw sugar begins when "the raw material goes to the first piece of machinery that changes its composition," the raw material being the billets. According to Daniel Cuervo, a mechanical engineer employed by Cora, Cora takes no part in the harvesting or cutting of the cane, other than telling farmers how much cane needs to be cut on any given day. Cora's trucks simply transport the cut billets to the sugar mill for storage and processing. There is no machinery or processes that act upon the billets while they are being transported and stored in the trailers. According to the expert testimony of Dr. Kenneth Gravois, a sugarcane extension specialist retained by Cora, the phase of harvesting cane ends once the cane is cut, and the phase of manufacturing immediately begins from that point. Physical processing occurs at the mill; physiological processing, or the natural degradation of sucrose into dextran, occurs before the billets reach the mill.

The record indicates harvesting is separate and apart from the manufacturing phase. "Manufacturing," as defined by La. R.S. 47:301(3)(i)(cc), means:

> ... [p]utting raw materials through a series of steps that brings about a change in their composition or *physical* nature in order to make a new and different item of tangible personal property that will be sold to another. Manufacturing begins at the point at which raw materials reach the first machine or piece of equipment involved in changing the form of the material and ends at the point at which manufacturing has altered the material to its completed form ... Manufacturing, for purposes of this Subparagraph, does not include the following:
>
> . . .
>
> (III) The storage of tangible personal property.
> (IV) The delivery of tangible personal property to or from the plant. (Emphasis added.)

We agree with Ms. Hinds' assessment of when the manufacturing process begins. The trucks and trailers are used by Cora for the transport and/or storage of cane billets and play no part as machinery that changes the form of the billets. Other than natural chemical processes to the billets that Cora cannot alter, no physical changes are made to the billets while they are being transported and stored in the trailers. Although Mr. Cuervo was knowledgeable in the process of manufacturing raw sugar and Dr. Gravois was knowledgeable in the time-sensitive nature of sucrose degrading into dextran, Ms. Hinds better understood the statutory definitions of La. R.S. 47:301, which would or would not exclude the items Cora claimed were refundable.

As the trier of fact, the Board gave more weight to Ms. Hinds's testimony, given her qualifications as a tax auditor, in determining when the manufacturing process began for taxation purposes. See *Board of Sup'rs of Louisiana State University and Agr. and Mechanical College v. 1732 Canal Street, L.L.C.*, 2012-1370 (La. App. 4 Cir. 6/19/13), 159 So.3d 470, 472, writ denied, 2013-2383 (La. 1/10/14), 130 So.3d 330. Cora's trucks and trailers clearly do not fall under the MM&E exclusions of La. R.S. 47:301, and the Board correctly found that the

vehicles themselves, as well as any parts used in their maintenance and repair, were taxable.

*All Other Claimed Items*

The Board also reviewed various items that Cora characterized as necessary and vital to the manufacturing process, either because they were component parts of manufacturing machinery or were used in the repair or refurbishment of said machinery. Louisiana Revised Statutes 47:301 applies the MM&E exclusion to machinery and equipment used by a manufacturer predominantly and directly in the actual manufacturing process. Therefore, the Board reviewed various invoices to determine whether the items included would be taxable or not. Also, the Board relied heavily on the testimony of Mr. Cuervo, who had extensive knowledge of the manufacturing process and the machinery involved.

Under the Louisiana Administrative Code, Title 61, Part 1, section 4301, machinery or equipment that is a principal component of the manufacturing process and has a substantially useful life beyond one tax year is eligible for depreciation. Examples of eligible items are pumps, valves, and compressors. Examples of ineligible items are nuts, bolts, gaskets, lubricants, filters, and fuel. 61 LAC Pt. I, § 4301(h)(iv). Repairs to manufacturing machinery and equipment to keep the property in an ordinarily efficient working order are generally not eligible for depreciation; however, any tangible property purchased for use in the repair, so long as the property is a major component of the manufacturing process and has a substantially useful life beyond the current tax period, will be eligible for depreciation. 61 LAC Pt. I, § 4301(h)(vii).

After our review of the submitted invoices and the testimony in the record, we cannot find any error in the Board's conclusions. Any invoiced items that were component parts of the sugar mill's manufacturing machinery (boilers, centrifuges,

8

turbines, etc.) were identified as having a useful life beyond one year and met the MM&E exclusion. Any items that did not have a substantial useful life beyond a year (nuts, screws, gaskets, seals, grease, etc.) were deemed taxable. Any invoiced labor was also correctly identified as taxable.

Cora also claimed a tax refund under the MM&E exclusion for alterations made to the tin roof of one of the mill's warehouses. Mr. Cuervo explained to the Board that after a new conveyor belt was installed to transfer sugar into the warehouse, the roof had to be modified so that the conveyor belt would be completely housed and without the raw sugar exposed to outside moisture.

Again, La. R.S. 47:301(3)(i)(cc) expressly states that storage of tangible personal property is not a part of manufacturing for MM&E exclusion purposes. Furthermore, La. R.S. 47:301(3)(i)(aa)(II)(aaa) excludes from the definition of machinery and equipment "[a] building and its structural components, unless the building or structural component is so closely related to the machinery and equipment that it houses or supports that the building or structural component can be expected to be replaced when the machinery or equipment are replaced."

Mr. Cuervo did not testify that the warehouse and the conveyor belt were one and the same. Rather, he stated that a portion of the warehouse had to be cut open so that the conveyor belt could pass into it from another building. The portion of the conveyor belt that was between the two buildings was what required the roof extension. The new roof is therefore not part of either building or the conveyor belt, but an additional roof built to encase the exposed portion of the conveyor belt. Based on the statutory language, we find the Board was correct in concluding the new roof did not fall under the MM&E exclusion.

Cora also claimed an MM&E exclusion refund for the sugar mill's heavy equipment. Mr. Cuervo testified that the mill uses front-end loaders, excavators, dozers, and cranes to transport and store raw sugar and sugar cane. Transporting

9

raw materials, as with the trucks and trailers, does not meet the criteria of the MM&E exclusion. La. R.S. 47:301(3)(i)(ii)(aa)(II)(ccc).

## CONCLUSION

The Board correctly interpreted the law that is applicable to the instant case. While Cora's witnesses could provide in-depth testimony of the sugar manufacturing process, the Board was nevertheless required to apply the clear language of La. R.S. 47:301 to determine which claims fell under the MM&E exclusion and which did not. After our review of all the exhibits in the record, we conclude the Board did not commit any manifest error in its factual determinations of which invoiced items were taxable and which were not taxable.

## DECREE

The judgment of the Louisiana Board of Tax Appeals, which granted a partial tax refund to the appellant, Cora-Texas Mfg. Co., Inc., is affirmed. All costs of this appeal are assessed to the appellant.

**AFFIRMED.**